IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| NITZA SCARBRO, ) | |
| ) | |
|     Ms. Scarbro, ) | |
| ) | |
| v. ) | Case No. 3:15-cv-01023 |
| ) | Judge Trauger/Frensley |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
|     Defendant. ) | |

**REPORT AND RECOMMENDATION**

This matter is before the Court upon a "Motion to Dismiss Counts I and IV" filed by the Social Security Administration ("SSA"), which is the plaintiff, Ms. Scarbro's, employer. Docket No. 63. In its Motion, SSA argues that Ms. Scarbro fails to state a claim for gender discrimination upon which relief can be granted, and failed to exhaust her administrative remedies before asserting sexual harassment claims. *Id.* SSA has also filed a Supporting Memorandum of Law. Docket No. 64. Ms. Scarbro has filed a Response and Memorandum of Law in Opposition. Docket No. 65.

**1. Motions to Dismiss Under Fed. R. Civ. P.**

The United States Court of Appeals for the Sixth Circuit has described the standard of review on a motion to dismiss as follows:

> Under *Rule 8(a)(2) of the Federal Rules of Civil Procedure*, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929*

> *(2007)*. Rather, to survive a motion to dismiss, the plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level," *id.*, and to "state a claim to relief that is plausible on its face," *id. at 570*, *see also Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949-50, 173 L. Ed. 2d 868 (2009)*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal, 129 F. Ct. at 1949*. And although we must accept all well-pleaded factual allegations in the complaint as true, we need not "accept as true a legal conclusion couched as a factual allegation." *Twombly, 550 U.S. at 555* (quoting *Papasan v. Allain, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986))*; see also *Iqbal, 556 U.S. at 678*.

*Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009); *accord Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010).

## **2. Factual Allegations**

The following factual allegations are taken from the Amended Complaint, and are accepted as true for the purposes of the Motion to Dismiss. Ms. Scarbro is a female employee of SSA, where she has been employed since approximately 2001. She alleges that around 2009, she began working with a male Staff Assistant, Dan Phillips, who subsequently began to treat her in ways that made her uncomfortable. *Id.* at 3-8. Although she reported Mr. Phillips' conduct to her supervisors, they did not take appropriate steps to address the situation. Examples of Mr. Phillips' behavior include:

> On or around September 30, 2012, Phillips approached [Ms. Scarbro] and informed her that he was having marital issues and that his wife had broached the topic of an "open marriage." Phillips insinuated that he wanted her to participate in his open marriage.
> . . .
> In September of 2012, Phillips made a statement to Ms. Scarbro that she was the "only woman he wanted to have his money." At this time, Ms. Scarbro was collecting money from management for

2

an office activity. Each employee was to give Ms. Scarbro seven dollars. Phillips gave Ms. Scarbro 10 dollars instead. He said he did not want his wife to have his money. At that time he stared at Ms. Scarbro, and stated "you are the only WOMAN I want to have my money."

Phillips frequently stared at Ms. Scarbro, making her feel uncomfortable. Because of such, she was unable to concentrate on her work.

Phillips also asked inappropriate personal questions about [Ms. Scarbro's] husband, who was in Afghanistan working as a contractor.

In or around October 2012, Phillips waited at the end of the parking lot for Ms. Scarbro to approach.

. . .

Thereafter, [Ms. Scarbro] avoided Phillips, but he kept coming near her.
. . .

On or around September 30, 2013, Phillips waited for [Ms. Scarbro] in the parking lot. [Ms. Scarbro] was very afraid during this encounter. Phillips proceeded to move his car next to hers.

. . .

On December 10, 2013, Phillips left the office at 5:25 p.m., while Ms. Scarbro remained to close up the office. Phillips waited for her in the parking lot. He sat in his car as she exited the lot.

. . .

While the SSA was investigating the complaint from March 26, 2014, through May 22, 2014, Phillips ceased making personal and sexual comments to [Ms. Scarbro], but he began harassing her in retaliation for her complaints.

. . .

Phillips continued to harass Ms. Scarbro. On or around January 26, 2015, Phillips stayed at work after 5:30 pm despite the fact that

> he was previously told not to stay that late when [Ms. Scarbro] was closing.

*Id.* at 3-8 (paragraph numbering omitted; emphasis in original).

### **3. Title VII Claim of Gender Discrimination**

Ms. Scarbo contends that SSA segregated or classified her based on her gender, "in a way that deprived employment opportunities to Ms. Scarbro or otherwise adversely affected her status as an employee." Docket No. 67, p. 9. Specifically, Ms. Scarbro alleges that "SSA chose to ignore or diminish the complaints and concerns of female Ms. Scarbro, while taking seriously the concerns of a male employee, Mr. Phillips;" and that "SSA's decision to treat Ms. Scarbro less favorably than her male co-workers resulted from a knowing and intentional pattern of gender discrimination." *Id.* SSA disputes these allegations, arguing that "Ms. Scarbro does not allege any facts that plausibly link [SSA's] alleged treatment of her complaints or concerns to her gender." Docket No. 64, p. 4. Ms. Scarbro responds that her Amended Complaint "provides ample facts sufficient to show that SSA segregated and classified her based on her gender and that it treated her less favorably than her male coworkers." Docket No. 65, p. 3. Ms. Scarbo points to her allegations that she was sexually harassed by Mr. Phillips, that she repeatedly reported the harassment to her supervisors, and that the supervisors not only failed to take adequate steps to remedy the situation, but minimized Ms. Scarbro's concerns (e.g., stating that he did not "see the big deal") and in some instances, exacerbated the situation (e.g., by asking Ms. Scarbro to include Mr. Phillips in her invitations to co-workers for lunch). *Id.* at 3-4.

Title VII makes it an unlawful employment practice for an employer to discriminate against any individual because of such individual's gender. 42 U.S.C. § 2000e-2(a)(1). An employer may not limit, segregate, or classify employees "in any way which would deprive or

4

tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's . . . sex." 42 U.S.C. § 2003-3(a)(2). In the context of a motion to dismiss, it is not necessary for a plaintiff to plead specific facts establishing a prima facie case of discrimination; rather, "an employment discrimination complaint need not include such facts and instead must contain only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508; 122 S.Ct. 992 (2002), *quoting* Fed. R. Civ. P. 8(a)(2). "Such a statement must simply 'give the SSA fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Id.* at 512, *quoting Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99 (1957). "'When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Id.* at 511, *quoting Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974).

 Ms. Scarbro alleges that:

> Defendant did segregate or classify Plaintiff, based upon her gender, in a way that deprived employment opportunities to Plaintiff or otherwise adversely affected her status as an employee.
>
> Defendant chose to ignore or diminish the complaints and concerns of female Plaintiff, while taking seriously the concerns of a male employee, Mr. Phillips.

Docket No. 67, p. 9 (paragraph numbering omitted).

 Yet aside from these and similar statements, Ms. Scarbro does not plead that the treatment she received was based upon her gender. *See* Docket No. 67. She does not factually connect the alleged harassment she experienced at the hands of Mr. Phillips nor the alleged non-response of her supervisors with her status as a woman. The one instance in which Ms. Scarbro

5

alleges that her gender specifically arose in the context of the alleged harassment took place when Mr. Phillips allegedly stated: "you are the only WOMAN I want to have my money." *Id.* at 3 (emphasis in original). Although this statement is strange, and arguably an instance of harassment, it does not present an allegation that Ms. Scarbro was targeted because of her gender. Ms. Scarbro does not plead any adverse employment action other than the hostile work environment that forms the basis of Counts II and IV. Count I of the Amended Complaint does not satisfy the requirements of Fed. R. Civ. P. 8(a)(2) because it does not give SSA fair notice the basis for Ms. Scarbro's claim. Even construing the facts in the light most favorable to Ms. Scarbro, the Amended Complaint does not state a gender discrimination claim in Count I under Title VII, and that count should therefore be dismissed.

### 4. Title VII Claims of Sexual Harassment and Hostile Work Environment

Ms. Scarbro contends that SSA subjected her to a Hostile Work Environment (Count II) and Sexual Harassment (Count IV). Docket No. 67, p. 9-11. SSA argues that Count IV and the sexual harassment claim in Count II should be dismissed because Ms. Scarbro did not exhaust her administrative remedies before bringing suit, as she "did not allege sexual harassment to an EEO counselor or in her formal complaint . . . ." Docket No. 64, p. 6. SSA further argues that in interviews with an EEO counselor, Ms. Scarbro "did not allege many of the other actions that form the basis of her current claims . . . ." *Id.* at 5. Ms. Scarbro responds that "administrative exhaustion is not a jurisdictional requirement under Title VII," and that notwithstanding, she "did exhaust her administrative remedies before asserting her discrimination claims in her civil action filed under Title VII." Docket No. 65, p. 4-5. Ms. Scarbro asserts that her factual allegations at the EEO stage match those in her Amended Complaint, barring some "linguistic

subtleties" and interpretative differences that should not be the basis of a dismissal at this stage. *Id.* at 5-6. Ms. Scarbro further contends that:

> Finally, even if the Court were to find that Ms. Scarbro did not file a formal complaint on the instances of the sexual harassment claim, these claims are reasonably related to the factual allegations in the EEO complaint and would have prompted an investigation into the different, uncharged claim.

*Id.* at 6.

Exhaustion of administrative remedies is a prerequisite to filing a federal court lawsuit alleging discrimination under Title VII. *Brown v. General Serv. Admin.*, 425 U.S. 820, 823-33, 96 S.Ct. 1961 (1979). "In the Sixth Circuit as elsewhere, federal employees who allege that they have been victims of discrimination must exhaust their administrative remedies." *DeJesus v. Geren*, No. 3:08cv0043, 2008 U.S. Dist. LEXIS 48870 at *30 (M.D. Tenn. June 23, 2008), *citing Benford v. Frank*, 943 F.2d 609, 612 (6th Cir. 1991) ("The right to bring an action under Title VII regarding equal employment in the federal government is predicated upon the timely exhaustion of administrative remedies").

The Court of Appeals for the Sixth Circuit has established "the general rule in this circuit . . . that the judicial complaint must be limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination." *Weigel v. Baptist Hospital of East Tennessee*, 302 F.3d 367, 380 (6th Cir. 2002) (internal citation omitted); *see also Bray v. Palm Beach Co.*, 907 F.2d 150 (6th Cir. 1990) ("the facts alleged in the body of the EEOC charge, rather than merely the boxes that are marked on the charge, are the major determinants of the scope of the charge"). As explained in *Weigel*, "where facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim." *Weigel*, 302 F.3d at 380 (internal quotation marks

7

and citation omitted). This principle has become known as the "expected scope of investigation" test. *Id.*; *see also Dixon v. Ashcroft*, 392 F.3d 212 (6th Cir. 2004) (noting that the failure to check the "Reprisal" box on the Complaint of Discrimination to indicate a retaliation claim is not dispositive of whether a plaintiff exhausted his administrative remedies with regard to that claim). Thus, the determinative inquiry in this case is whether Ms. Scarbro alleged sufficient facts in her EEOC complaints to put the SSA on notice of her sexual harassment claims.

Ms. Scarbro did not use the words "sexual harassment" in her EEOC complaint; on the contrary, she checked a box indicating that the alleged harassment was "non-sexual." Docket No. 64-1, p. 3. Nevertheless, the facts alleged include those that would prompt the EEOC to investigate a claim of sexual harassment. For example, the following narrative is taken from an EEO counselor's report:

> The aggrieved also stated that at the same time her husband was on deployment in Afghanistan [*sic*]. The Staff Assistant (male) pulled the aggrieved into the IVT room and immediately begins [*sic*] telling the aggrieved about his marital problems. The Staff Assistant (male) asked the aggrieved did she know [*sic*] what an open marriage was. The male staff assistant went on to state that his wife wanted an open marriage. The aggrieved stated that this incident made her feel extremely uncomfortable however [*sic*] she tried to move pass [*sic*] it. The aggrieved stated that the male staff assistant begin [*sic*] to start acting weird. The Staff Assistant (male) would frequent the desk of the aggrieved.

Docket No. 64-1, p. 3.

The undersigned finds that SSA had adequate notice of the sexual harassment claim, such that dismissal of Count IV and the sexual harassment component of Count II for failure to exhaust administrative remedies is not appropriate.

**5. Recommendation**

For the reasons stated above, the undersigned recommends that SSA's "Motion to Dismiss Counts I and IV" (Docket No. 63) be GRANTED as to dismissal of Count I (Gender Discrimination) and DENIED as to Count II (Hostile Work Environment) and Count IV (Sexual Harassment).

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

JEFFERY S. FRENSLEY
United States Magistrate Judge